UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:24CR514 RWS(SPM) |
| CARLOS CONNER, | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION AND MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). Currently pending before the Court is Defendant Carlos Conner's Motion to Suppress Evidence seized by law enforcement on September 12, 2024. ECF No. 29. The central issue raised in Conner's suppression motion is whether police officers had reasonable suspicion to believe criminal activity was afoot when they approached Conner, almost immediately thereafter placed him in handcuffs, and advised that they were investigating a gun they observed in his possession. Conner contends the officers did not have reasonable suspicion. As such, Conner posits, the officers violated the Fourth Amendment when they handcuffed him, and any evidence seized thereafter must be suppressed as fruits of an unconstitutional seizure. [1]

---

[1] The United States contends Conner lacks standing to seek a suppression order because he had no privacy interest in the location from which evidence was seized—i.e., the steps of a vacant house and the pocket of a jacket Conner denied belonged to him. *See* USA Post-Hearing Brief, ECF No. 48., p. 6-11. This argument misapprehends Conner's asserted basis for suppression. At its core, Conner's motion rests on the idea that police violated the Fourth Amendment when they initially seized him and placed him in handcuffs because, according to Conner, at that point police lacked either reasonable suspicion or probable cause to believe criminal activity was afoot. *See* Deft. Post-hearing Br., ECF No. 51, p. 1-6. The undersigned agrees with the reasoning in Conner's Post-hearing brief and finds the United States' standing challenge lacks merit. Except as noted here, this Report and Recommendation does not address the United States' standing challenge.

I.   BACKGROUND AND PROCEDURAL HISTORY

Conner is charged in a two-count indictment with possession with intent to distribute fentanyl (Count 1) and possession of a firearm in furtherance of a drug trafficking crime (Count 2). The charges stem from Conner's arrest on September 12, 2024, following a pedestrian check by two officers with the St. Louis Metropolitan Police Department. The pedestrian check evolved into an arrest after the officers determined Conner possessed a stolen firearm and over 100 fentanyl pills. Conner was arraigned on October 16, 2024. Through counsel, Conner requested and was granted until November 15, 2024, to file pretrial motions.  After requesting additional extensions of time, Conner, through counsel, filed the motion to suppress evidence and statements currently pending before the undersigned.

On April 7, 2025, the undersigned held an evidentiary hearing on Conner's motion.  The United States offered testimony of St. Louis Metropolitan Police Department Officers Dashawn Wilson ("Officer Wilson") and Charles Sheets ("Officer Sheets") and introduced the exhibits listed on the Clerk's Exhibit List.  *See* ECF No. 36. Counsel for Conner cross-examined the officers but offered no additional testimony or documentary evidence.

At the close of the evidentiary hearing, the parties requested and were granted time to request a transcript of the hearing and to file post-hearing briefs.  The transcript of the evidentiary hearing was filed on April 15, 2025. ECF No. 39. Consistent with the scheduling orders entered by the undersigned, post hearing briefing was completed on July 14, 2025, and the motion is now ready for a ruling. *See* ECF Nos. 42, 44, 47, 48, 50 & 51.  The undersigned has carefully considered the evidence that was offered and admitted at the evidentiary hearing.  The undersigned has also considered the arguments of the parties both at the hearing and in their written submissions.  Based upon the evidence adduced at the hearing and the written

2

submissions of the parties, the undersigned makes the following findings of fact and conclusions of law.

## II.     FINDINGS OF FACT

The undersigned found both Officer Wilson and Officer Sheets to be credible witnesses and makes the following findings of fact based on their testimony at the evidentiary hearing as well as the video and other evidence presented at the hearing.

On September 12, 2024, St. Louis Metropolitan Police Department Officers Sheets and Wilson were patrolling the College Hill/Hyde Park in North St. Louis City in their marked police car when Officer Sheets, who was seated in the front passenger seat, observed the defendant, Carlos Conner, sitting on the front steps of a vacant residence. Conner drew Officer Sheet's attention because he was pointing a firearm that had a drum magazine attached toward the opposite side of the street. When Conner realized he was being observed by law enforcement, he immediately moved the firearm out of the officer's line of sight. When Officer Sheet alerted Officer Wilson to what he had observed, Officer Wilson made a U-turn to return to the area of the vacant residence.

As of September 12, 2024, both officers were familiar with the area they were patrolling and were aware that it was known for violent crime, including homicides, drug trafficking, and gang activity. In fact, before September 12, 2024, Officer Wilson had several different encounters at the vacant residence where Conner was spotted. He had addressed people inside the vacant house and people sitting on the steps of the vacant house. He even made a drug-related arrest a few years earlier at the vacant house, although he had not previously interacted with Conner. Although he did not immediately recognize Conner, Officer Sheets had previously interacted with Conner at an area gas station—an interaction that led Sheets to associate Conner

3

with a local gang in the area. Considering what they knew about the area, Officer Sheets radioed for backup before the officers got out of their marked police car. Once the officers got out of their police car, they encountered Benny Whalen, a drug dealer from the area they had previously interacted with. They briefly chatted with Whalen before slowly approaching the steps of the vacant residence where Conner remained perched.

As the officers approached Conner, they observed a second man sitting on the steps of the house next door, which was also a vacant/boarded up house. The officers approached Conner from slightly different angles, with Officer Sheets approaching Conner from his left-hand side and Officer Wilson approaching from the right. From Officer Wilson's vantage point, he was immediately able to see the gun tucked into an opening in the steps of the vacant house. For officer safety, both officers directed Conner to put his hand on his head. Conner complied and was placed in handcuffs. Officer Wilson asked Conner for his name, address, and if he had any identification on him. Conner did not have any identification on him but provided his name and address which was not in the area where police encountered him.

Officer Wilson told Conner that they had stopped him because they observed him on the steps of a vacant property and because he was in a neighborhood known for violence and gang activity, but if everything checked out, they were going to let him go. Officer Wilson seized the gun from the steps and picked up a live cartridge that was ejected from the gun. As Officer Wilson headed back to his patrol car to run Conner's name and the gun through the police database, another SLMPD officer (Officer Reed), arrived at the scene and began interacting with the second man the officers had seen sitting on the steps of the vacant house next door.

Officer Reed quickly realized that the man sitting on the steps of the house next door was sitting on an AK-47, as if to conceal it from police. The man, later determined to be Anthony

4

Conner (no relation to defendant), denied that the AK-47 belonged to him. Officer Wilson seized the AK-47, took down Anthony Conner's pedigree information, and returned to his patrol car to run the pedigree information of both men through the police database. Although Anthony Conner had a lengthy criminal history, he was not a convicted felon. So, the officers eventually released him. The officers seized theAK-47 because Anthony Conner denied it belonged to him.

The records check of Carlos Conner revealed he had some prior arrests but, like Anthony, was also not a convicted felon. However, the firearm seized from the steps where Carlos had been sitting was reported as stolen. After receiving confirmation that the gun seized from Carlos was stolen, the officers advised him that he was going to be placed under arrest for possessing a stolen firearm. When the officers told Carlos he was being arrested, he disclaimed ownership of a backpack that had been near him on the steps of the vacant house and claimed the jacket he had been wearing throughout his encounter with police was not his. Carlos did not answer when asked who, if not him, owned the jacket he had been wearing. The officers *Mirandized* Carlos and conducted a search incident to arrest. In doing so, they found a plastic bag in the jacket pocket filled with over one hundred capsules that later tested positive for fentanyl. He was subsequently charged with the offenses he is facing in this Court.

### III. CONCLUSIONS OF LAW

Based on the foregoing factual findings, almost immediately after the officers approached the defendant, they placed him in handcuffs, advised him of their prior observations, and told him they would let him go if, after their investigation, everything checked out. Conner contends this initial detention by the officers violated the Fourth Amendment. The Fourth Amendment protects people against unreasonable government seizures. U.S. Const. amend. IV ("[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

5

seizures, shall not be violated"). For Fourth Amendment purposes, a seizure occurs whenever an officer restrains an individual's liberty by physical force or a show of authority to which the individual submits. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). If unreasonable under the circumstances, such seizures violate the Fourth Amendment.

In *Terry v. Ohio,* 392 U.S. 1, 28-31 (1968), the Supreme Court held that investigatory stops— i.e., brief seizures by police that fall short of traditional arrests—are reasonable and lawful if justified by a reasonable suspicion that an individual is engaged in criminal activity and if police activities during the investigatory stop are reasonably related to the circumstances that initially justified the stop. *See also Rodriguez v. United States,* 135 S. Ct. 1609, 1615 (2015). "Reasonable suspicion requires that the officers' suspicion be based upon particularized objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime has been committed." *United States v. Smith,* 648 F.3d 654, 658 (8th Cir. 2011) (internal citations omitted). An "inchoate and unparticularized suspicion or hunch" is insufficient. *Terry,* 392 U.S. at 27 (internal quotation marks omitted). In determining whether a police officer had reasonable suspicion of criminal activity, the court must "look at the totality of the circumstances, allowing officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Harvey,* 1 F.4th 578, 581 (8th Cir. 2021). *See also United States v. Gray*, 213 F.3d 998, 1000 (8th Cir. 2000) (quoting *United States v. Cortez,* 449 U.S. 411, 418 (1981)). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004), *abrogated on other grounds by Rodriguez v. United States*, 575 U.S. 348 (2015).

In conducting an investigatory *Terry*-type stop, "[o]fficers must 'use the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the *Terry* stop.'" *United States v. Newell,* 596 F.3d 876, 879 (8th Cir. 2010) (quoting *Terry,* 392 U.S. at 25-31). Where police exceed the permissible scope articulated in *Terry*, the investigatory detention is transformed into an arrest that must be supported by probable cause. *United States v. Aquino*, 674 F.3d 918, 924 (8th Cir. 2012). However, officers may, without converting an investigatory *Terry* stop into an arrest, take any measures that are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Newell,* 596 F.3d 876, 879 (8th Cir. 2010) (quoting *Terry,* 392 U.S. at 25-31). "[W]hen officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety." *Smith,* 648 F.3d at 654 (quoting *United States v. Fisher,* 364 F.3d 970, 973 (8th Cir. 2004)). *See also United States v. Danielson,* 728 F.2d 1143, 1146-47 (8th Cir.1984) (concluding investigatory detention did not become an arrest when the officers drew their weapons before approaching the vehicle occupied by suspected armed bank robbers).

    A.    THE OFFICERS' INITIAL DETENTION OF CONNER DID NOT VIOLATE THE FOURTH AMENDMENT

For several reasons, the officers' decision to temporarily detain Conner and investigate further was based on "particularized objective facts which, taken together with rational inferences from those facts," reasonably warranted suspicion that criminal activity was afoot. *Smith,* 648 F.3d at 658. First, Officer Sheets' attention was drawn to the defendant when he saw him sitting on the front steps of a vacant residence pointing a firearm that had an extended drum magazine toward the opposite side of the street. When the defendant realized he was being

7

observed by law enforcement, he immediately moved the firearm out of the officer's line of sight. The undersigned does not disagree with Conner's argument that because "the Missouri legislature has decided its citizens may be entrusted with firearms on public streets," there is nothing inherently criminal about the fact that he was sitting on the front steps of a residence while possessing a firearm. *See* ECF No. 44, p. 1-2. However, Officer Sheets explained that it was the combination of the defendant pointing/aiming a gun across the street in a residential area and then concealing it once he realized he was being watched by law enforcement that first raised his suspicion that criminal activity may be afoot.

The officers' suspicion was further informed by their familiarity with the area and their knowledge that the neighborhood was known for violence, including homicides, gang activity, and drug trafficking, and their familiarity with the vacant house as location where criminal activity had occurred in the past. Specifically, the evidence of record demonstrates that before they ever encountered the defendant on September 12, 2024, Officer Wilson had several different encounters at the same vacant residence where the defendant was spotted and had even made a drug-related arrest a few years earlier at the vacant house. Considering what they knew about the area and the specific residence, Officer Sheets radioed for backup before he and Officer Wilson got out of their police car. The fact that a local drug dealer recognized the officers and chatted briefly with them before they approached Conner only bolsters their testimony about their familiarity with the neighborhood. The evidence also demonstrates that as the officers approached the defendant, Officer Wilson observed the gun sticking out of a crack or opening in the steps where the defendant was sitting.

Taken together, these factors amount to reasonable suspicion that Conner was engaged in criminal activity, and a reasonable belief that Conner might pose a risk to officer safety. *See*

*United States v. Hayden,* 759 F.3d 842, 847 (8th Cir. 2014) (patrolling officers had reasonable suspicion criminal activity was afoot where officers knew there had been an increase in burglaries in the area; it was late at night and officers knew from experience it was unusual to find people on the street after dark in this high-crime area; defendant and another man appeared to be casing a house for a burglary; as officers approached defendant turned away from the officers and placed his hand in his pocket as though reaching for a weapon); *United States v. Morgan,* 729 F.3d 1086, 1090 (8th Cir. 2013) (patrolling officers had reasonable suspicion to detain defendant and to believe defendant posed a danger where officers knew there had been recent robberies of 24-hor businesses; it was late at night and officers observed a car with tinted windows parked far away from the store entrance; occupants of the vehicle appeared to be attempting to conceal themselves, as officers approached the vehicle defendant made furtive gestures under his seat with both hands; and defendant refused to remove his hands from under the seat when the officer first ordered him to do so); *United States v. Martinez–Cortes,* 566 F.3d 767, 771 (8th Cir.2009) (where occupants of vehicle did not promptly comply with police command to show their hands, and driver moved his arms as if to hide something, "[t]hese furtive actions gave the officers reason to suspect ... that criminal activity was afoot, and that the occupants might be a risk to officer safety unless detained").

  In sum, there was no Fourth Amendment violation when Officers Sheets and Wilson approached Conner and placed him in handcuffs while they investigated further because that temporary initial detention was supported by reasonable suspicion that he may be engaged in criminal activity.

### B.     CONNER'S SUBSEQUENT ARREST AND OFFICERS' SEIZURE OF THE PILLS DID NOT VIOLATE THE FOURTH AMENDMENT

The officers subsequent arrest of Conner also did not violate the Fourth Amendment. The arrest of a person is "quintessentially a seizure" required by the Fourth Amendment to be reasonable. *United States v. Watson,* 423 U.S. 411, 428 (1976) (Powell, J., concurring). If made pursuant to a warrant issued by a detached and neutral judge, an arrest is deemed to be presumptively reasonable. *See United States v. Leon,* 468 U.S. 897, 922 (1984) ("a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith;" as such "[s]earches [or seizures] pursuant to a warrant will rarely require any deep inquiry into reasonableness"). An officer may conduct a warrantless arrest without violating the Fourth Amendment if the officer has probable cause to believe the arrestee has committed a felony and the arrest occurs in a public place. *See Watson,* 423 U.S. at 423-24.

Based on the foregoing factual findings, the officers placed Conner under arrest only after they discovered that the gun he attempted to conceal in the steps of the vacant residence had been reported stolen. Upon being told he was being arrested, Carlos disclaimed ownership of a backpack that had been near him on the steps of the vacant house and claimed the jacket he had been wearing throughout his encounter with police was not his. Carlos did not answer when asked who, if not him, owned the jacket he had been wearing. The officers *Mirandized* Carlos and conducted a search incident to arrest. In doing so, they found a plastic bag in the jacket pocket filled with over one hundred capsules that later tested positive for fentanyl.

Conner does not dispute that the officers had probable cause to arrest him for possession of a stolen firearm and the arrest clearly occurred in a public place—on the front steps of a house that appeared to be vacant and boarded up. As such, the officers had a valid reason for placing the defendant under arrest, and to perform a search incident to arrest for contraband. *United States v.*

10

*Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."). That search incident to arrest led to the discovery of the fentanyl pills in the pocket of the jacket Conner had been wearing.

### IV. CONCLUSION

In sum, Conner's suppression motion fails because neither the initial temporary investigatory detention of Conner nor his subsequent arrest violated the Fourth Amendment.

For all the foregoing reasons,

**IT IS HEREBY RECOMMENDED,** that Defendant Carlos Conner's Motion to Suppress Evidence (ECF No. 29) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Trial in this case will be set by separate order before the **Honorable Rodney W. Sippel.**

/s/ Shirley Palm

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: August 22, 2025